JEFF SILVESTRI, ESQ.
Nevada Bar No. 5779
DAVID STOFT, ESQ.
Nevada Bar No. 10241
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone:   702.873.4100
Facsimile:   702.873.9966
jsilvestri@mcdonaldcarano.com
dstoft@mcdonaldcarano.com

*Attorneys for Defendants Harris Corporation, M/A Com, Inc, TE Connectivity Ltd., TE Connectivity Inc., TE Connectivity Networks, Inc., Tyco Electronics Corporation, and Tyco Electronics, Ltd.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>Plaintiff,<br><br>v.<br><br>HARRIS CORPORATION, M/A COM, INC., TE CONNECTIVITY LTD., TE CONNECTIVITY INC., TYCO ELECTRONICS CORPORATION, TYCO ELECTRONICS, LTD., and DOES 1-25, inclusive,<br><br>Defendants. | CASE NO. 2:13-cv-01780-GMN-VCF<br><br>**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

Defendants Harris Corporation ("Harris"), M/A Com, Inc. ("M/A COM"), TE Connectivity, Ltd., TE Connectivity, Inc., Tyco Electronics Corporation, and Tyco Electronics, Ltd. (collectively, "Defendants"), by and through their attorneys, McDonald Carano Wilson LLP, submit this motion to dismiss the amended complaint (the "Complaint") filed by Las Vegas Metropolitan Police Department ("LVMPD") for failure to state a claim pursuant to FRCP 9(b) and 12(b)(6), and for lack of clarity caused by failing to assert its claims within separate counts as required by FRCP 10(b).

LVMPD's claims for fraud and negligent misrepresentation are legally invalid under the economic loss doctrine and must be dismissed pursuant to FRCP 12(b)(6). Additionally, the fraud

and negligent misrepresentation claims are not pled with the requisite particularity and must be dismissed pursuant to FRCP 9(b). Finally, the complaint must be dismissed pursuant to FRCP 10(b) because it lacks clarity due to LVMPD's failure to assert its claims within separate counts.

## I. FACTS

In accordance with the review to be conducted in the context of a motion to dismiss, and without admitting the veracity or accuracy of the LVMPD's allegations, below is a recitation of the facts alleged by LVMPD.

### A. LVMPD's Contract with M/A COM to Upgrade LVMPD's Radio Communication System.

At some point "[p]rior to 2005, LVMPD came to the conclusion that the radio communication system it had been using for a number of years needed to be replaced," and "in July 2005, LVMPD began to formally explore the replacement of the radio system it had been utilizing." Complaint at ¶¶ 6 and 7, attached hereto as **Exhibit A**. "A notice was published which invited companies to make proposals concerning the replacement of the radio system." Id. at ¶ 8. M/A COM was one of the companies that submitted a written proposal, which "was voluminous and contained detailed representations and statements that were material to the decision to purchase a radio system from M/A COM," and "described a state of the art radio system that would, among other things, provide redundancies, reliability, maintainability and interoperability." Id. at ¶ 9.

"After M/A COM submitted its [P]roposal, authorization was provided to allow negotiations to occur with M/A COM for a new radio system infrastructure that would support, among other things, all voice and low speed data communications for LVMPD's users." Id. at ¶ 10. "A contract between M/A COM and LVMPD was ostensibly entered into in 2006 pertaining to a radio system infrastructure, which incorporated M/A COM's proposal." Id. at ¶ 11. A true and accurate

///
///
///
///

copy of the contract (the "2006 Contract") is attached hereto as **Exhibit B**.[1] Pertinent hereto, the 2006 Contract expressly incorporates the Proposal by reference, which "together with [the] Contract, constitute the Contract Documents." 2006 Contract (Exhibit B) at § VII.Z.

"It took several years for the radio system infrastructure to be built," and "[a]mong other things, towers had to be constructed at various remote sites in or about the Las Vegas Valley." Complaint at ¶ 12. "In 2009, an assignment occurred between M/A COM to Harris whereby Harris assumed M/A COM's contractual duties, warranties and/or other obligations." Id. at ¶ 13.

### B. The Additional Contracts for Equipment Upgrades and Maintenance.

"In addition to entering into a contract pertaining to the radio system infrastructure, which was to serve as the back-bone for LVMPD's communication system, LVMPD agreed to purchase thousands of mobile and hand-held radios for use by officers in the field." Id. at ¶ 14. "Most of the radios were purchased from Harris," but some radios were also "purchased from M/A COM." Id. "LVMPD also ostensibly entered into a contract with Harris for the purchase of new radio dispatch consoles and a recording system to, among other things, facilitate communications between LVMPD's dispatch and police officers in the field." Id. at ¶ 16. LVMPD and Harris also entered other agreements related to "ancillary software and maintenance" of the radio communication system upgrades. Id. at ¶ 18.

### C. LVMPD's Contract-Based Claims.

LVMPD alleges that one or more of the contracts between LVMPD and Defendants have been breached based on the alleged fact that "the radio system infrastructure, radios, console and recording system" were tested and "Harris has been given multiple opportunities to rectify the . . . [e]xtensive problems [that] have been encountered." Id. at ¶¶ 19-21. LVMPD further alleges that "LVMPD's reports of problems have been met with repeated assurances by Harris that the problems

---

[1] The 2006 Contract can be attached and considered by this Court without converting this Motion to a motion for summary judgment. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" and that "[s]uch consideration does not convert the motion to dismiss into a motion for summary judgment") (internal quotation marks omitted), overruled on other grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); see also U.S. v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (citing Branch v. Tunnell, 14 F.3d 449, 454).

would be rectified . . . , and that the radio system infrastructure, radios, consoles and recording system would ultimately be able to perform as originally expected." Id. at ¶¶ 24-25.

Ultimately, LVMPD alleges that Harris was unsuccessful in its "attempts at repair" of the communications system despite being afforded reasonable time and opportunities to cure the problems, Defendants failed to "deliver and implement a fully functioning communication system to LVMPD," and the "communication system is effectively useless as a result of the breaches by Defendants." Id. at ¶¶ 26-28, and 32-33. According to LVMPD, it has not yet "accepted the radio system infrastructure, radios, consoles and/or recording system . . . ," or "[t]o the extent that acceptance could be deemed to have occurred, LVMPD has revoked its acceptance." Id. at ¶ 29-31.

Based on these alleged facts, LVMPD claims that Defendants have materially breached the terms of the contract or contracts, the implied covenant of good faith and fair dealing, and/or the warranties "by, among other things, failing to deliver to LVMPD a properly functioning communication system, including but not limited to the radio system infrastructure, radios, consoles and recording system." Id. at ¶¶ 37-38.

### D. LVMPD's Misrepresentation Claims.

In addition to the contract-based claims, the LVMPD appears to assert a claim for fraud and/or negligent misrepresentation (collectively, the "Misrepresentation Claims") against Defendants. Although the basis for these claims is difficult to decipher, they appear to be based on the following select few conclusory allegations regarding allegedly false representations that Defendants made to LVMPD:

- "In connection with the sale of the radio communication system to LVMPD, Defendants provided false information to LVMPD for its guidance in business transactions." Id. at ¶ 46.

- "Defendants failed to exercise reasonable care or competence in obtaining or communicating appropriate information to LVMPD." Id. at ¶ 47.

- "Prior to the time that the radio communications system was procured, M/A COM falsely represented, among other things, the capabilities of the radio communication system. See, e.g., voluminous proposal from M/A COM to LVMPD dated 9/1/05 that

contains detailed statements of fact. The false representations were perpetuated and/or continued to be made over time by M/A COM and Harris." Id. at ¶ 50.

- "Defendants, by their words and actions, made representations of facts and circumstances that were not true and which misled LVMPD." Id. at ¶ 51.

No additional details regarding the Misrepresentation Claims can be gleaned from the allegations in LVMPD's Complaint.

## II.  ARGUMENT

LVMPD's Misrepresentation Claims must be dismissed pursuant to FRCP 12(b)(6) because they are barred by the economic loss doctrine as redundant of LVMPD's contract-based claims. The Misrepresentation Claims must also be dismissed because the claims contain nothing more than general allegations and conclusions, and they do not contain the specificity detailing the alleged negligent or fraudulent misrepresentations that is required by FRCP 9(b). Finally, the entire amended complaint lacks clarity because it does not set forth the claims in separate counts, and therefore, should be dismissed pursuant to FRCP 10(b). Plaintiff should be required to amend the pleading to set forth the causes of action in clearly definable counts so that Defendants can, with more certainty, understand what Plaintiff's contract claims are, what contracts allegedly have been breached, and what allegations support each claim.

### A.  The Standard for Dismissal Pursuant to FRCP 12(b)(6).

The United States Supreme Court recently held that to open the doors to discovery, a plaintiff must first allege a plausible claim for relief as judged by judicial experience and common sense. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). It has also recently clarified the standards a complaint must meet to withstand a motion to dismiss under FRCP 12(b)(6): "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [under Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" As a result, "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007) (quoting FRCP 8; first set of brackets in original).

With this standard in mind, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1988); The Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Regional Planning Agency, 365 F. Supp.2d 1146, 1152 (D. Nev. 2005) (citation omitted). Nevertheless, to "state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory," in other words, enough facts to state a claim that is facially plausible. Bell Atlantic Corp., 550 U.S. at 568, 127 S. Ct. at 1968. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950. A plaintiff's allegations that are conclusory in nature "disentitles them to the presumption of truth." Id. at 1951. As discussed below, Plaintiff's Complaint fails to meet this pleading standard.

**B.    The Misrepresentation Claims are Legally Invalid under Nevada's Economic Loss Rule Because They Are Based on Alleged Breaches of Contract.**

**1.    Overview of the Economic Loss Rule.**

The legal invalidity of LVMPD's Misrepresentation Claims is rooted in Nevada's adoption of the "economic loss rule," which generally provides that "there can be no recovery in tort for purely economic losses." Calloway v. City of Reno, 116 Nev. 250, 257, 993 P.2d 1259, 1263 (2000) (overruled on other grounds). "Purely economic loss is generally defined as 'the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property.'" Id. (citations omitted). "Other property" means "property other than the defective entity itself." Id. at 262, 993 P.2d at 1267 (citation omitted). "The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Id. at 256, 993 P.2d at 1263. As applied, the economic loss rule generally precludes "tort claims that are interwoven with

the claim that arise[s] from a contractual breach." <u>Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.</u>, 359 F. Supp. 2d 1075, 1082 (D. Nev. 2004) (overruled in part by <u>Giles v. Gen. Motors Acceptance Corp.</u>, 494 F.3d 865 (9th Cir. 2007)).

### 2. The Broadened Application of the Economic Loss Rule.

The economic loss doctrine originates out of "common law limitations on recovery of damages in negligence actions in the absence of physical harm to person or property" and became an officially recognized doctrine only within the last 50 years as the concept was applied in product liability cases. <u>Giles</u> at 873. In that context, the rule limited a recovery in "tort . . . to damages for physical injury to persons or property," in order to keep "contract law [from] drown[ing] in a sea of tort." <u>Id.</u> at 874 (citation omitted). Although most courts that have applied the economic loss rule outside the context of product liability cases, some courts have given the rule even greater application. <u>Id.</u> at 876 (citing <u>Apollo Group Inc. v. Avnet, Inc.</u>, 58 F.3d 477, 480–81 (barring common law tortious breach of warranty and negligent misrepresentation claims under Arizona law because plaintiff sought "to recover purely 'benefit of the bargain'" economic losses based on "foreseeable risks [that] could have been—and indeed were—allocated by the parties in their contractual agreement"); <u>Cerabio LLC v. Wright Med. Tech., Inc.</u>, 410 F.3d 981, 990 (7th Cir.2005) (barring fraud claim under Wisconsin law because it "pertain[ed] to the character and quality of the product that [was] the subject matter of the contract"); <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 679–81 (3d Cir.2002) (barring fraud claim under Pennsylvania law because "appellants are unable to explain why contract remedies are inadequate to provide redress when the alleged misrepresentation relates to the quality or characteristics of the goods sold"); <u>Hoseline, Inc. v. U.S.A. Diversified Prods., Inc.</u>, 40 F.3d 1198, 1200 (11th Cir.1994) (barring fraud and civil theft claims under Florida law where defendant allegedly "misrepresented the amount of coil in its boxes" because "[i]n essence, both ... claims arose from USA's breach of its contractual obligation to ship certain quantities"); <u>First Care Med. Clinic, Inc. v. Polymedco, Inc.</u>, No. 3:05–CV–82, 2006 WL 3497845, at *3–5 (W.D.N.C. Dec.4, 2006) (barring recovery of economic loss for intentional misrepresentation about product in product liability action); <u>Huron Tool & Eng.g Co. v. Precision Consulting Servs., Inc.</u>, 209 Mich.App. 365, 532 N.W.2d 541, 546 (1995) (barring fraud claim in

software defect case because the alleged misrepresentations were "indistinguishable from the terms of the contract and warranty" and therefore plaintiff "fail[ed] to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty"); Id. at 545 (holding generally that fraud claims are barred "where the ... misrepresentation by the dishonest party concerns the quality or character of the goods sold"); Kaloti Enters., Inc. v. Kellogg Sales Co., 283 Wis.2d 555, 699 N.W.2d 205, 219–21 (2005) (following Huron Tool in recognizing fraud in the inducement exception except where the fraud concerns the quality or characteristics of goods); see also Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 881 P.2d 986, 992 (1994) (limiting recovery for construction delays to contract remedies to increase "predictability in allocating risk")).

In states where the economic loss rule is more widely applied, torts are barred when they "amount[] to nothing more than a failure to perform a promise contained in a contract." Giles at 876; see also Yearington, 359 F. Supp. 2d at 1082. In those cases, the plaintiff is limited to "well-developed contractual remedies, such as the remedies that the Uniform Commercial Code (in force in all U.S. states) provides for breach of warranty of the quality, fitness, or specifications of goods," leaving "'no need to provide tort remedies. . . .'" Giles at 876 (quoting All–Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862, 865–66 (7th Cir.1999)). This broadened application of the economic loss doctrine does not result in precluding a recovery of economic losses altogether, "[r]ather, the result is that [plaintiffs] must seek recovery for their economic losses in contract rather than in tort." Id. at 877.

### 3. Nevada's Broad Application of the Economic Loss Rule.

Nevada's application of the economic loss rule to preclude torts that are based on contract-breach allegations is confirmed by Nevada's seminal cases addressing the application of the rule: Calloway v. City of Reno, 116 Nev. 250, 993 P.2d 1259 (2000) and Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865 (9th Cir. 2007).

*Calloway v. City of Reno*

In Calloway, the Nevada Supreme Court applied the economic loss rule to construction defect cases, thereby confirming that the rule can be applied in Nevada outside the specific context

of product liability torts. 116 Nev. at 259-61, 993 P.2d at 1265-66. The construction defect claims at issue in Calloway were asserted by a class of homeowners alleging defects within their homes' siding and roofs, resulting in significant damage from rain and snow. 116 Nev. at 254, 993 P.2d at 1261-62. To recover for these alleged damages, plaintiffs asserted claims for breach of express and implied warranties, negligence, strict liability, fraud and misrepresentation. 116 Nev. at 255, 993 P.2d at 1262. The district court entered summary judgment against the plaintiffs finding that the economic loss doctrine precluded the plaintiffs from recovering pure economic losses in negligence and further finding "that plaintiffs had to rely on their contractual remedies to recover for economic losses." Id. The plaintiffs appealed.

On appeal, the Nevada Supreme Court upheld the lower court's ruling while expressly recognizing Nevada's adoption of the economic loss rule and acknowledging its broad application beyond products liability cases. Specifically, the Court held that "the economic loss doctrine arose, in large part, from the development of products liability, **but its application is broader and serves to maintain a distinction between contract and tort principles.**" 116 Nev. at 260, 993 P.2d at 1265 (quoting Ramerth v. Hart, 133 Idaho 194, 983 P.2d 848, 851 (1999)) (emphasis added). Leaving no doubt regarding an expansive application of the economic loss rule, the Court clarified that "the economic loss doctrine precludes recovery for strictly economic losses in tort – regardless whether such damages are sought from an injurious product." 116 Nev. at 261, 993 P.2d at 1266. To apply the rule, "[t]he question to be determined ... is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." 116 Nev. at 260, 993 P.2d at 1265 (quoting Bernard v. Rockhill Dev. Co., 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987)).

*Giles v. Gen. Motors Acceptance Corp.*

In Giles, relying in large part on the holding set forth in Calloway, the Ninth Circuit Court of Appeals interpreted Nevada's application of the economic loss rule to preclude torts that are based on contract-breach allegations. Addressing claims similar to those at issue in this litigation, the Giles court consolidated the appeals of two automobile dealership owner-operators (the "Gileses") who filed suit against the company that provided the two dealerships with floor plan financing,

GMAC. 494 F.3d at 869. The Gileses generally claimed that GMAC was wrong to place a hold on one of the Gileses' bank accounts and record a lien against property owned by the Gileses after GMAC audited the Gileses' dealerships and purportedly found that vehicles has been sold or leased without repaying GMAC the portion of the loan attributable to those vehicles. Id. at 870. The Gileses claimed that the account hold and property lien, and the events leading up thereto, constituted fraudulent and negligent misrepresentation, conversion, breach of fiduciary and confidential relationship duty, constructive fraud, undue influence, intentional infliction of emotional distress, and breach of contract. Id. Most pertinent hereto, the Gileses' fraud claim was based on an allegation that GMAC had tricked them into signing pre-dated authorizations for GMAC to initiate the account hold. Id. at 870-871. Ultimately, the district court entered summary judgment in favor of GMAC holding that the Gileses' tort claims were all precluded under Nevada's economic loss rule as "interwoven with contractual claims." Id. at 872; see also Yearington, 359 F.Supp.2d at 1082 and 1085 (explaining that the order for summary judgment on appeal in Giles was based on the tort claims being "interwoven with contractual claims"). The Gileses appealed.

Recognizing Nevada's application of the economic loss rule to the Gileses' fraud claim as one of first impression in Nevada, the Ninth Circuit Court articulated a thorough analysis of the origin and prevailing policy interests behind the economic loss rule, and the manner in which the rule has been applied by the Nevada Supreme Court. Giles, 494 F.3d at 872-879. Citing to Calloway as "[t]he leading Nevada case on the economic loss doctrine," the Giles Court noted that Calloway applied the economic loss doctrine to limit homeowner's recovery of "purely economic losses" in construction defect to "a suit for breach of contract." Id. at 877 (citing Calloway, 993 P.2d at 1269). The Giles Court also acknowledged that Nevada applies the economic loss doctrine to bar recovery "in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability," and **"may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract."** Id. at 879 (emphasis added). Ultimately, however, the Court reversed the lower court's entry of summary judgment, finding that the Gileses' fraud claim was based on "behavior outside of the contractual obligations and in violation of the duty imposed under Nevada law not to commit fraud." Id. at 880.

The fraudulent action of tricking the Gileses into executing the account hold authorization was "extraneous to the contract" at issue, and not merely a "misrepresentation about the characteristics or quality of goods that are the subject of the contract," nor a breach of a duty "'arising by virtue of the alleged express agreement between the parties.'" Id. at 880 (citing Calloway, 993 P.2d at 1263).

### 4. Nevada's Economic Loss Rule Precludes the LVMPD's Misrepresentation Claims.

Pursuant to Calloway and Giles, LVMPD's Misrepresentation Claims are legally barred pursuant to Nevada's adoption of the economic loss rule because the claims are undeniably based on an alleged duty arising from the contracts that Defendants entered with LVMPD. It cannot be disputed that LVMPD's lawsuit is entirely premised on the allegation that the Defendants did not provide the radio communications system that Defendants were allegedly obligated to provide pursuant to contract. This is the precise basis for LVMPD's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of warranty.

Although the allegations supporting LVMPD's Misrepresentation Claims are few, LVMPD has alleged one notable detail – i.e. the alleged misrepresentations by the Defendants are made within M/A COM's Proposal. As previously mentioned, the Proposal was expressly incorporated into and made part of the 2006 Contract. See supra 3:1-3. There being no difference between the obligations and/or promises set forth within the Proposal and those set forth within the 2006 Contract, the Misrepresentation Claims are undeniably contract-based. Because LVMPD admits that representations are contained within the Proposal, and therefore part of the 2006 Contract, the Defendants' alleged behavior—the breach of those representations or misrepresentation--does not fall "outside of the contractual obligations," nor was it "extraneous to the contract," as would be required for the claims to survive under Giles. Rather, more appropriately, the alleged misrepresentations concern "the characteristics or quality of goods that are the subject of the contract" and relate to the alleged breach of a duty "arising by virtue of the alleged express agreement between the parties" – claims that are specifically precluded under the economic loss rule as recognized by the binding precedent of Giles. Consequently, the Misrepresentation Claims fail as a matter of law pursuant to the holdings of Calloway and Giles and must be dismissed.

### C. The Misrepresentation Claims Must be Dismissed for Failure to Plead the Claims with the Particularity Required by FRCP 9(b).

Even if the Misrepresentation Claims were not barred by the economic loss doctrine, those claims still must be dismissed because they fail to meet the heightened pleading requirements of FRCP 9(b).

FRCP 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc., 460 F. Supp. 2d 1222, 1244 (D. Nev. 2006) (applying the pleading particularity requirement of Fed.R.Civ.P. 9(b) to negligent misrepresentation claims). "Rule 9(b)'s purpose is to guard against unsubstantiated allegations and the harm that arises from fraud claims." Id. at 1104; see also Ross v. Bolton, 904 F.2d 819, 823 (2nd Cir. 1990) (Rule 9(b)'s heightened pleading requirement "safeguards defendant's reputation and goodwill from improvident charges of wrongdoing"). When a plaintiff alleges fraud, the circumstances constituting the alleged fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Vess, 317 F.3d at 1106 (citations omitted). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "[A] plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (citing Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994). The dismissal of a claim that fails to meet Rule 9(b)'s requirements is proper. Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

LVMPD's Misrepresentations Claims are based on nothing but vague and conclusory allegations regarding unspecified misrepresentations. LVMPD makes general allegations that "Defendants provided false information to LVMPD for its guidance in business transactions," "Defendant's failed to exercise reasonable care or competence in obtaining or communicating appropriate information to LVMPD," "Defendants falsely represented, among other things, the capabilities of the radio communication system [within the Proposal]," and "Defendants made representations of facts and circumstances that were not true and which misled LVMPD."

Complaint at ¶¶ 46, 47, 50 and 51.  None of these allegations contain any information about "the who, what, when, where, and how" of the alleged misconduct.  That is, there is no detail regarding who made the statements, what statements were made, how and when the statements were made, why the statements were false, and how LVMD relied on the statements to its detriment.  In every way, the Misrepresentation Claims are lacking the specificity required by FRCP 9(b) and must be dismissed as a result.

**D.**     **LVMPD's Complaint Must be Dismissed Pursuant to FRCP 10(b).**

Additionally, LVMPD's Complaint must be dismissed in its entirety for failing to adhere to the technical requirements of FRCP 10(b), which provides that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  LVMPD has failed to differentiate its claims in any fashion, choosing instead to interject allegations that appear to suggest the assertion of a cause of action within an array of mostly conclusory factual allegations.  See Complaint at ¶¶ 6-61.  The result is a one count pleading in which it is difficult, if not impossible, to determine the causes of action being asserted and the facts alleged in support thereof.  Accordingly, there being no question that clarity would have been promoted had each count been stated separately, the Complaint should be dismissed in its entirety.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

Based on the foregoing, Defendants request that this Court dismiss LVMPD's claims for fraud and/or negligent misrepresentation for failing to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6) and 9(b), and request that the Complaint be dismissed in its entirety pursuant to FRCP 10(b).

RESPECTFULLY SUMITTED this 4th day of October, 2013.

McDONALD CARANO WILSON LLP

By: /s/ Jeff Silvestri
JEFF SILVESTRI, ESQ. (#5779)
DAVID STOFT, ESQ. (#10241)
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone:    702.873.4100
Facsimile:    702.873.9966
jsilvestri@mcdonaldcarano.com
dstoft@mcdonaldcarano.com

*Attorneys for Defendants Harris Corporation, M/A Com, Inc, TE Connectivity Ltd., TE Connectivity Inc., TE Connectivity Networks, Inc., Tyco Electronics Corporation, and Tyco Electronics, Ltd.*

288545

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that on the 4th day of October, 2013, a true and correct copy of the foregoing **MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification in this case.

/s/ Della Sampson
An employee of McDonald Carano Wilson LLP